# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-01015-COA

**TYRICE LUCAS**                                                        **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                               **APPELLEE**

DATE OF JUDGMENT:                07/13/2023
TRIAL JUDGE:                     HON. RICHARD A. SMITH
COURT FROM WHICH APPEALED:       LEFLORE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:          OFFICE OF STATE PUBLIC DEFENDER
                                 BY: JUSTIN TAYLOR COOK
ATTORNEY FOR APPELLEE:           OFFICE OF THE ATTORNEY GENERAL
                                 BY: BARBARA WAKELAND BYRD
DISTRICT ATTORNEY:               WILLIE DEWAYNE RICHARDSON
NATURE OF THE CASE:              CRIMINAL - FELONY
DISPOSITION:                     REVERSED AND VACATED - 12/03/2024
MOTION FOR REHEARING FILED:

## BEFORE WILSON, P.J., WESTBROOKS AND McDONALD, JJ.

## WILSON, P.J., FOR THE COURT:

¶1.     Tyrice Lucas was indicted for burglary of a dwelling. Over Lucas's objection, the trial court instructed the jury on felony malicious mischief as a lesser offense of burglary. The jury acquitted Lucas of burglary but found him guilty of malicious mischief. Because malicious mischief is not a lesser-included offense of burglary of a dwelling, we reverse Lucas's conviction and vacate his sentence.

## FACTS AND PROCEDURAL HISTORY

¶2.     On May 11, 2022, Greenwood police officer Tanareika Williams responded to a reported apartment burglary. Araka Lucas (Araka) told Williams that her cousin Tyrice

Lucas (Lucas) had assaulted her and broken into her apartment. The apartment's "storm door was busted," "glass [was] everywhere," there "was blood on the wall," and the apartment had been ransacked. Araka told police that prior to the incident, Lucas had not been to her apartment "for a while" because she had called the police previously.

¶3.     Detective Megan McKinnon of the Greenwood Police Department also went to the apartment. She testified that the storm door had been shattered with a concrete dog statue. Videos from nearby security cameras were admitted into evidence and played for the jury. The videos show Lucas fighting with Araka outside the apartment, picking up the statue, and walking toward Araka's apartment door. On cross-examination, McKinnon conceded that she could not "really determine if [Lucas] used the dog statue to shatter the . . . door" because it was "not on camera." She assumed he had done so because "he picked up the dog, walked off with it, and came back into the camera view without the dog."

¶4.     Lucas was indicted for burglary of a dwelling. *See* Miss. Code Ann. § 97-17-23 (Rev. 2020). The indictment's heading stated, "**BURGLARY OF A DWELLING 97-17-23**." The indictment then alleged that

> LUCAS . . . did wilfully, unlawfully, feloniously and burglariously break and enter [Araka's apartment] with the intent to commit the crime of malicious mischief by destroying [Araka's] real or personal property . . . , causing over $1,000.00 but less than $5,000.00 of damage, in violation of section 97-17-23, Mississippi Code . . . .

¶5.     At trial, however, Araka testified, "[Lucas] ain't have nowhere to stay so I did take him in. So it ain't like he came in and burglarized the house or anything like that, broke in."

2

Araka stated that when she arrived home on May 11, "[t]he door was wide open, and you could tell from the outside that it had been destroyed[.]" She explained that Lucas "wasn't his self," and after she screamed at him, he "jumped on [her and] beat [her]."

¶6. On cross-examination, Araka maintained that she had given Lucas permission to stay at her apartment and that she never told him he could not enter the apartment. On redirect examination, Araka testified that Lucas "didn't break in" and "was already in [her apartment] when he destroyed it." Araka further testified, "I never did say he broke in my house; because like I told [the police], I was taking him in during the time when [he] ain't have nowhere to go." Araka stated that when she left on May 10 to stay with a friend, Lucas was already inside her apartment. Araka did concede that Lucas did not have permission to destroy her belongings and that he caused over $1,000 worth of damage.

¶7. The court eventually granted the State's request to treat Araka as a hostile witness. Araka then testified that she told police that Lucas had not been at her apartment recently and accused him of breaking in only because the housing authority had threatened to evict her if she allowed Lucas "back on the premises." The video of Araka's original statement to police was played for the jury "for impeachment purposes."

¶8. During the jury instruction conference, the State requested that the jury be instructed on the crime of felony malicious mischief in addition to burglary. Lucas objected, arguing that because "malicious mischief . . . was not the crime indicted," the instruction would amount to "an improper amendment to the indictment." The State argued that the instruction

3

was proper because felony malicious mischief was "the underlying crime on the house burglary charge." The trial judge stated that he "might tend to agree with" Lucas's objection "[i]f it were another crime," but he would give the instruction "because . . . felony malicious mischief [was] in the indictment."

¶9.     The jury found Lucas *not* guilty of burglary of a dwelling but guilty of malicious mischief.[1]  The court sentenced Lucas to five years in the custody of the Department of Corrections, with two years to serve, three years suspended, and three years of post-release supervision.  Lucas filed a motion for judgment notwithstanding the verdict or a new trial, which was denied, and a notice of appeal.

## ANALYSIS

¶10.    On appeal, Lucas argues that the trial court erred by instructing the jury on the crime of felony malicious mischief.  Lucas's "contention that the State was not entitled to a lesser-offense instruction raises a question of law, which this Court reviews de novo."  *Hall v. State*, 127 So. 3d 202, 204 (¶6) (Miss. 2013).

¶11.    Mississippi Code Annotated section 99-19-5(1) provides that "the jury may find the defendant guilty of the offense as charged . . . or may find him guilty of an inferior offense, or other offense, the commission of which is *necessarily included* in the offense with which

---

[1] The court also instructed the jury on trespass as a lesser-included offense of burglary.  The court instructed the jury to consider trespass only if it found that the State had failed to prove both burglary and malicious mischief.  Although the jury found Lucas guilty of malicious mischief, the jury also specifically found that Lucas was not guilty of trespass.

he is charged in the indictment . . . without any additional count in the indictment for that purpose." Miss. Code Ann. § 99-19-5(1) (Rev. 2020) (emphasis added). Applying this statute, the Mississippi Supreme Court has held that if "(1) the lesser offense is necessarily included within the statutory definition of the charged offense, or (2) the indictment contains such allegations that a lesser offense is necessarily charged in the indictment, then the state may receive the benefit of [section] 99-19-5 if the evidence supports an instruction on the lesser offense." *State v. Shaw*, 880 So. 2d 296, 300 (¶14) (Miss. 2004) (quoting *Hailey v. State*, 537 So. 2d 411, 416 (Miss. 1988)).

¶12. "A lesser-included offense is one in which all [its] essential ingredients are contained in the offense for which the accused is indicted." *Eubanks v. State*, 341 So. 3d 896, 913 (¶62) (Miss. 2022) (brackets omitted) (quoting *Downs v. State*, 962 So. 2d 1255, 1261 (¶23) (Miss. 2007)). "Because the greater offense contains all elements of the lesser-included offense, an indictment for the greater offense implicitly includes a charge of the lesser-included offense, even though it is not listed as a separately charged crime. Thus, a defendant is on notice of the possibility of conviction of the lesser-included offense." *Edwards v. State*, 124 So. 3d 105, 109 (¶10) (Miss. Ct. App. 2013).

¶13. In contrast, a "'lesser-*non*-included offense,' also called a 'lesser-related offense' or a 'lesser offense,' has elements not contained in the greater crime." *Davis v. State*, 347 So. 3d 1205, 1211 (¶12) (Miss. Ct. App. 2022) (emphasis added) (citing *Hye v. State*, 162 So. 3d 750, 751 (¶2) (Miss. 2015)). "Because the lesser offense is not necessarily included in

5

the charged offense, a defendant is *not* on notice that he or she may be criminally liable for the lesser-non-included crime." *Edwards*, 124 So. 3d at 109 (¶11) (emphasis added).

¶14. Burglary of a dwelling is the "breaking and entering the dwelling house . . . of another . . . with intent to commit some crime therein." Miss. Code Ann. § 97-17-23(1). Here, the indictment alleged that Lucas broke into and entered into Araka's dwelling with the intent to commit the crime of malicious mischief. To convict Lucas of burglary, the State was *not* required to allege or prove that Lucas *actually* committed the "underlying offense" of malicious mischief or that Lucas destroyed *any* property belonging to Araka. *Freeman v. State*, 220 So. 3d 1024, 1027 (¶10) (Miss. Ct. App. 2017) (quoting *White v. State*, 195 So.3d 765, 769 (¶11) (Miss. 2016)). Rather, the second element of the crime of burglary *only* required the State to allege and prove that Lucas broke into and entered the apartment *with the intent* to commit the crime of malicious mischief. *Id.* As the Mississippi Supreme Court has explained, "[*T*]*he second element* [*of the crime of burglary*] *should not be mistaken for a separate, underlying, or subcrime of burglary. The defendant is on trial for burglary, not the intended crime*." *Brady v. State*, 337 So. 3d 218, 230 (¶44) (Miss. 2022) (emphasis added) (brackets, quotation marks, and citation omitted).

¶15. In contrast, a person is "guilty of malicious mischief" if he "maliciously or mischievously destroy[s], disfigure[s], or injure[s], or cause[s] to be destroyed, disfigured, or injured, any property of another, either real or personal." Miss. Code Ann. § 97-17-67(1) (Rev. 2020). Therefore, to convict a defendant of malicious mischief, the State must allege

6

and prove that the defendant *actually* destroyed the property of another and that he did so "maliciously or mischievously." Thus, malicious mischief contains elements *not* included in the crime of burglary of a dwelling. Accordingly, Lucas's indictment for burglary of a dwelling did not put him on notice that he could be held criminally liable for the distinct offense of felony malicious mischief.

¶16. The State argues that even though the offense of malicious mischief is not necessarily included within the *statutory* definition of the crime of burglary, malicious mischief is a lesser-included offense *in this particular case* because the indictment in this case included the elements of malicious mischief. We disagree. While the indictment did describe the value of the property that Lucas allegedly intended to destroy, it did so only in the context of alleging that Lucas broke into and entered the apartment "*with the intent to commit* the crime of malicious mischief." (Emphasis added). Lucas's indictment *for burglary* was not required to and did not allege that he *actually* committed the crime of malicious mischief.

¶17. We note that the State can and frequently does pursue and obtain convictions for *both* burglary *and* the intended crime. For example, in *Rasheed v. State*, 237 So. 3d 822 (Miss. Ct. App. 2017), we explained:

> Rasheed argues that his convictions for aggravated assault and burglary of a dwelling (i.e., breaking and entering with the intent to assault) violated the constitutional prohibition against double jeopardy. However, materially indistinguishable claims have been rejected in prior cases. *See generally Smith v. State*, 429 So. 2d 252, 257 (Miss. 1983) (holding that conviction for both rape and burglary of a dwelling with the intent to commit the offense of rape therein does not violate double jeopardy because the essential elements of the two offenses are different); *see also, e.g., Washington v. State*, 800 So. 2d

7

1140, 1147 (¶26) (Miss. 2001) (same as to burglary and armed robbery). The crime of burglary was complete the moment Rasheed forcibly entered the apartment with the intent to cause bodily injury to Randle; in contrast, the crime of aggravated assault was not complete until Rasheed stabbed Randle, but that offense did not require proof that Rasheed entered the apartment with any particular intent. Rasheed committed and was convicted of two different offenses with different essential elements. The issue is without merit.

*Id.* at 832 (¶35). If the intended crime *really* were a lesser-included offense of burglary, the State would not be able to obtain convictions for both. *Currier v. Virginia*, 585 U.S. 493, 500 (2018) ("Historically, courts have treated greater and lesser-included offenses as the same offense for double jeopardy purposes, so a conviction on one normally precludes a later trial on the other."); *Meeks v. State*, 604 So. 2d 748, 752 (Miss. 1992) ("[T]he defendant may be convicted and punished for . . . the greater or the lesser included [offense]—but not both."). The lesson is that the intended crime simply is *not* a lesser-included offense of burglary. For that reason, the State *can* pursue convictions for both, but if it wants to do so, the intended crime must be indicted as a separate count.[2]

¶18. In summary, malicious mischief is not a lesser-included offense under Lucas's indictment for burglary. It is a lesser-*non*-included offense. Regardless of the proof at trial,

---

[2] The State also relies on *Lay v. State*, 305 So. 3d 1229 (Miss. Ct. App. 2020), where this Court held that the defendant's indictment for capital murder put him on notice of the underlying or predicate offense as a lesser-included offense of capital murder. *Id.* at 1231-32 (¶10). The State's reliance on *Lay* is misplaced. It is well-settled that the underlying or predicate felony in a capital murder indictment *is* a lesser-included offense precisely because the capital murder charge requires proof of the underlying felony. *Meeks*, 604 So. 2d at 752. In contrast, as explained above, a burglary charge only requires proof of an *intent to commit* the intended crime. *Brady*, 337 So. 3d at 230 (¶44).

the State is not entitled to a jury instruction on a lesser-non-included offense. *Hall v. State*, 187 So. 3d 133, 137 n.1 (Miss. 2016). When, as in this case, the defendant has been convicted of a crime for which he was not indicted, the appropriate remedy is to reverse the judgment of conviction and vacate his sentence. *Hall*, 127 So. 3d at 206-07 (¶¶13-18). Therefore, we reverse Lucas's conviction and vacate his sentence.

¶19. **REVERSED AND VACATED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, McDONALD, McCARTY, SMITH, EMFINGER AND WEDDLE, JJ., CONCUR. LAWRENCE, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**